[No. A029001. First Dist., Div. Three. Oct. 30, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT JOSEPH TIMMONS, Defendant and Appellant.

[No. A030770. First Dist., Div. Three. Oct. 30, 1985.]

In re SCOTT JOSEPH TIMMONS on Habeas Corpus.

COUNSEL

Linda F. Robertson, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

John K. Van de Kamp, Attorney General, and Robert R. Granucci, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

WHITE, P. J.—Petitioner Scott Joseph Timmons seeks a writ of habeas corpus, contending that the state's failure to dispose of pending probation violation charges, while he was in custody in New Hampshire, precluded his incarceration as a probation violator at the conclusion of his New Hampshire sentence. Petitioner further claims that he was denied effective assistance of counsel at his probation revocation hearing because his counsel failed to move for dismissal of the revocation proceedings. Petitioner has also filed an appeal raising the same issues as he raises in his petition for writ of habeas corpus. The documentation which supports his claims is contained in his petition for writ of habeas corpus. We have determined that petitioner is entitled to the relief he seeks given the documentation contained in his petition for writ of habeas corpus and that he should therefore be discharged from custody. Since we are granting the writ of habeas corpus, the appeal becomes moot and is dismissed as moot.

On December 28, 1977, an information was filed in the Superior Court of San Mateo County charging petitioner with kidnap for ransom (Pen. Code, § 209), conspiracy (Pen. Code, § 182) and vehicle theft (Veh. Code, § 10851). On January 26, 1978, petitioner pled guilty to kidnap for ransom and vehicle theft. On March 15, 1978, the trial court sentenced petitioner to a life term in state prison with possibility of parole for the kidnaping and a concurrent two-year term for vehicle theft. Execution of sentence was suspended and petitioner was placed on five-years probation on condition that he serve consecutive one-year terms in county jail and perform 2,080 hours of public service work within three years of his release from custody.

After being released from county jail on August 14, 1979, petitioner moved to his parents' home in Michigan. Courtesy probation supervision was accepted and petitioner completed 207 hours of public service work before moving to New Hampshire in October 1980.

In October of 1982, petitioner was convicted of several new charges in New Hampshire and was sentenced to a term in the New Hampshire State Prison. In March of 1983 the Adult Probation Department of the County of San Mateo filed an affidavit of probation violation in the superior court of that county, alleging that petitioner had violated his probation in that he had sustained criminal convictions in the State of New Hampshire and that he

had failed to perform the requisite number of hours of public service work. On March 11, 1983, the Superior Court of San Mateo County issued its order revoking and terminating petitioner's probation and directed issuance of a bench warrant for his arrest.

On July 9, 1983, petitioner notified the district attorney and the Superior Court of San Mateo County that he was imprisoned in New Hampshire State Prison and requested final disposition of the "Violation of Order Admitting Defendant to Probation." On the same date the warden of New Hampshire State Prison notified the District Attorney and the Superior Court of San Mateo that he was willing to deliver temporary custody of petitioner to the proper authority in order that the "Violation of Order Admitting Defendant to Probation" could be resolved in a speedy manner. On July 27, 1983, the Chief Deputy District Attorney of San Mateo County sent to New Hampshire State Prison a "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer."[1] In a letter sent with that form the district attorney stated that it wished petitioner returned to San Mateo County during the week of August 22, 1983, for a probation revocation hearing.[2]

In August of 1983, the San Mateo District Attorney notified the New Hampshire State Prison that California would not pay to transport petitioner to San Mateo County for probation revocation proceedings while he was serving his sentence.

In June of 1984, when petitioner completed his term in New Hampshire, he was detained and transported to California for probation revocation proceedings. A probation revocation hearing was held on July 19, 1984, at which time the court found true some of the allegations of probation violation. On September 20, 1984, the suspension of appellant's sentence was lifted and he was sent to state prison for the terms set at his original sentencing in March of 1978. At the hearing on September 20, 1984, the defense counsel, the district attorney and the court were all apparently in agreement that petitioner's request for return could be treated as one made under Penal Code section 1203.2a for sentencing under his probation. Both counsel erroneously assumed, however, that petitioner was not entitled to relief under the provisions of the statute because he had been an out-of-state prisoner.

---

[1] This form was certified by the Honorable Frank Piombo, Judge of the San Mateo County Superior Court.

[2] The People argue since this information is on paper containing no letterhead or other indication who typed it, it is of no evidentiary value. However, this typed statement is certified to be a true copy from the records office of New Hampshire State Prison.

Penal Code section 1203.2a provides in pertinent part: "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement." ▉ In *Hayes* v. *Superior Court* (1971) 6 Cal.3d 216, 223 [98 Cal.Rptr. 449, 490 P.2d 1137], the California Supreme Court noted that section 1203.2a is limited to defendants " 'committed to prison in this State.' " ▉ In *Hayes,* the California Supreme Court analyzed the purpose of Penal Code section 1203.2a as follows: "Penal Code section 1203.2a establishes a procedure by which one committed to prison in California can obtain relief from the harmful uncertainty of other outstanding California convictions as to which he has been granted probation with imposition or execution of sentence suspended. That procedure benefits both the prisoner and the state. 'Fairness to one committed to a state prison and proper administration by the prison officials and the Adult Authority require that such outstanding convictions be reduced to judgment or be otherwise finally disposed of by termination of the trial court's jurisdiction.' (*In re Perez* (1966) 65 Cal.2d 224, 228 [53 Cal.Rptr. 414, 418 P.2d 6].) When the prisoner requests imposition of sentence under section 1203.2a he receives the benefit of the possibility of concurrent sentences. (*In re White* (1969) 1 Cal.3d 207, 211 [81 Cal.Rptr. 780, 460 P.2d 980].) The trial court and its clerk and probation officer are afforded the convenience of closing their files in a case which otherwise might remain undisposed of for years. Moreover, the procedure seeks to give prisoners the benefit of prompt sentencing or other final disposition while avoiding the government's expenditure of time and funds to produce imprisoned defendants for unnecessary court appearances." (*Id.,* at p. 222, fn. omitted.)

▉ The California Supreme Court determined that the same "considerations apply equally to the cases of defendants committed in California and the cases of defendants committed in other jurisdictions." (*Id.,* at p. 223.) The court concluded that under the equal protection clause of the California Constitution and the United States Constitution that an out-of-state prisoner could not be denied the benefits of Penal Code section 1203.2a. Accordingly, it would appear that petitioner in the instant case is entitled to the benefits afforded under Penal Code section 1203.2a.

A case which further supports this conclusion is *In re Flores* (1983) 140 Cal.App.3d 1019 [190 Cal.Rptr. 388]. In *Flores,* petitioner was sentenced to state prison for possession of narcotics for sale. Execution of sentence was suspended and petitioner was placed on five years' probation. Thereafter petitioner was incarcerated at the Federal Correctional Institution at Lompoc, California, having been convicted of federal crimes. Petitioner

made several requests in 1978 and 1979 that his probation violation be resolved. (*Id.*, at pp. 1021-1022.) In August of 1982, petitioner completed his term in federal prison and was delivered to the Los Angeles County Superior Court pursuant to the probation violation detainer. (*Id.*, at p. 1022.)

The court in *Flores* noted that Penal Code section 1203.2a makes separate provisions for defendants who were placed on probation without imposition of sentence and those on whom sentence was imposed by execution of sentence was suspended and then placed on probation. As to the first category, the court which releases the defendant on probation has jurisdiction to impose sentence in the absence of defendant, provided the defendant, through counsel, requests imposition of sentence, or personally in writing requests imposition of sentence and waives his right to be present and to be represented by counsel. (*Id.*, at p. 1023.)

As to defendants upon whom sentence was imposed prior to their being placed on probation, section 1203.2a provides that upon learning of the defendant's confinement on the new conviction, the court which released him on probation "shall issue its commitment." The statute also provides (as previously noted): "If the case is one in which sentence has previously been imposed, the court shall be deprived of jurisdiction over defendant if it does not issue its commitment or make other final order terminating its jurisdiction over defendant in the case within 60 days after being notified of the confinement." Both petitioner in the instant case and the petitioner in *Flores* fall within this second category.

■ The court in *Flores* noted that the mandatory summary action when sentence has been imposed, but execution suspended, raises several constitutional problems. However, the court in *Flores* concluded that the constitutional problems raised by section 1203.2a cannot be used to deprive an individual of the benefit which the statute was intended to confer upon him. (*Id.*, at p. 1025.)

Since the reasoning in *Flores* is directly applicable to the instant case, we quote in some detail from that opinion. "To the extent that the People are pointing out a constitutional defect in the statute, their point is well taken. ■ A defendant who was sentenced prior to being placed on probation has a right to a hearing, to be present, and to be represented by counsel when probation is revoked, just as does the defendant who was placed on probation without sentence having been imposed. (*Morrissey* v. *Brewer* (1972) 408 U.S. 471 [33 L.Ed.2d 484, 92 S.Ct. 2593]; *People* v. *Vickers* (1972) 8 Cal.3d 451 [105 Cal.Rptr. 305, 503 P.2d 1313].) The right to a revocation hearing exists even though the probationer has been convicted of a new

crime. Summary revocation of probation is not appropriate following a new conviction unless the probationer waives his right to a formal revocation hearing. (*People* v. *Coleman* (1975) 13 Cal.3d 867, 895, fn. 22 [120 Cal.Rptr. 384, 533 P.2d 1024].)

"By limiting the requirements of constitutional waivers to probationers on whom sentence has not previously been imposed, section 1203.2a ignores the constitutional rights of those on whom sentence was imposed prior to their being placed on probation.

■ "Petitioner herein at no time waived his right to a hearing, to be present, or to be represented by counsel. We could debate endlessly and unproductively the question of whether the trial court could lose jurisdiction over petitioner, pursuant to section 1203.2a, by failing to issue its commitment order within 60 days, when, if it had acted summarily as called for by the statute, it would have violated petitioner's constitutional rights.

"Petitioner, however, needs a practical answer to the far simpler question of whether his incarceration may continue or must terminate. The answer to that question is provided by *People* v. *Martinez* (1975) 46 Cal.App.3d 736 [120 Cal.Rptr. 362, 121 Cal.Rptr. 443].) In *Martinez,* after the defendant purported to waive his rights pursuant to section 1203.2a, his probation was revoked. On appeal he complained that his waivers were inadequate. The court held that the waivers were irrelevant because sentence had been imposed on Martinez prior to his being placed on probation, and section 1203.2a therefore required the trial court to issue its commitment order summarily. The court further held that the trial court had failed to act within the statutory time limit, then 30 days, and had therefore lost jurisdiction. (*People* v. *Martinez, supra,* 46 Cal.App.3d at pp. 740-743.)

"In a footnote, the court pointed out that the summary revocation procedures, provided for in section 1203.2a, had been modified by *Morrissey* v. *Brewer, supra,* 408 U.S. 471; *People* v. *Vickers, supra,* 8 Cal.3d 451, and their progeny, and that under those cases defendants had the right to a hearing, to be present and to counsel, even when sentence had been imposed before they were placed on probation. (*People* v. *Martinez, supra,* 46 Cal.App.3d at p. 741, fn. 2.) The court suggested that the Legislature might wish to expand the time limit specified for the court to act under section 1203.2a to accommodate the alterations in revocation procedures mandated by *Morrissey* and *Vickers.* The court, in *Martinez,* did not expressly advise the Legislature to extend the waiver provisions to probationers who were sentenced before being placed on probation. The Legislature heeded the court's advice in *Martinez* and expanded from 30 days to 60 days the time within which the trial court might issue its commitment order. The Legis-

lature has done nothing, however, to correct the far more serious constitutional problem to which *Martinez* directed its attention.

"The fact that section 1203.2a, as it now reads, poses a dilemma for trial courts should not be utilized to obscure the obvious intent of the Legislature, which was to guarantee that probation violations would be disposed of during the term of confinement on a new conviction. It is quite obvious that it was also petitioner's desire to dispose of the violation during his federal confinement. The dilemma created by the Legislature cannot be used to deprive him of the benefit which the statute was intended to confer upon him. We would strongly advise the Legislature, if it wishes to retain the policy embodied in section 1203.2a, to amend that statute to make the requisite constitutional waivers applicable to all probationers. In the meantime, we believe that *People* v. *Martinez, supra,* 46 Cal.App.3d 736, stated the correct rule in a situation analogous to petitioner's, and that a similar result is mandated in this case." (*Id.,* at pp. 1024-1025; fns. omitted.)

The writ is granted. Petitioner is ordered discharged from custody. The appeal is dismissed as moot.

Scott, J., and Barry-Deal, J., concurred.